IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHARLES D. HINER,

        Plaintiff,

vs.                              Case No. 12-2194-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On October 12, 2010, administrative law judge (ALJ) Mark R. Dawson issued his decision (R. at 9-23). Plaintiff alleges that he has been disabled since December 31, 2008 (R. at 9). Plaintiff is insured for disability insurance benefits through

March 31, 2013 (R. at 11).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 11).  At step two, the ALJ found that plaintiff has the following severe impairments: degenerative changes, lumbar spine; obesity; type II diabetes mellitus; bipolar disorder and anxiety disorder (R. at 11).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12).  After determining plaintiff's RFC (R. at 14), the ALJ determined at step four that plaintiff is unable to perform his past relevant work (R. at 21).  At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 22-23).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23).

**III.  Did the ALJ err in his weighing of the medical opinion evidence regarding plaintiff's mental impairments?**

Dr. Gambrill and ARNP (advanced registered nurse practitioner) Canterbury treated plaintiff from February 27, 2006 through January 11, 2010 (R. at 456-498, 687-689, 833, 936-948, 1032-1038).  They opined on April 13, 2009 that plaintiff had marked impairments in 9 out of 20 categories, and moderate impairments in another 6 categories (R. at 830-832).  They further opined that plaintiff's impairments met or equaled listed impairment 12.04 and/or 12.06 (R. at 826-829).  The ALJ

5

gave no weight to these opinions (R. at 20). By contrast, the ALJ gave great weight to the opinions of Dr. Cohen, a non-examining state agency physician (R. at 20). Dr. Cohen opined that plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions; in his ability to maintain attention and concentration for extended periods; and in his ability to interact appropriately with the general public. Dr. Cohen rendered this opinion on July 30, 2008, five months prior to plaintiff's onset date (R. at 683-685). The ALJ included many of these limitations in his RFC findings for the plaintiff (R. at 14).

The ALJ gave a number of reasons for discounting the opinions of Dr. Gambrill and ARNP Canterbury. The ALJ noted that the treatment providers indicated that "despite multiple trials of medications he still has had periods of time when symptom severity required hospitalization" (R. at 833). However, the ALJ found that plaintiff had only been hospitalized once in June 2007 for anxiety (R. at 19). This finding by the ALJ is not disputed by plaintiff in his brief.

The ALJ further stated that the treatment providers' findings of marked restrictions is "not explained," and that the opinions do not appear to be a reasoned analysis that persuasively explains how the proposed limitations are supported by the objective medical evidence, exam findings, and treatment

6

history (R. at 20). However, the letter from the treatment providers states the following:

> Due to Mr. Hiner's constant anxiety level, recurring panic attacks, and rapid mood swings he is unable to sustain the concentration, organization, and tolerance to maintain employment. In addition, interaction with the public is challenging because of his irritability and high anxiety. He has difficulty trusting people due to ongoing paranoia which also is disruptive to relationship development with co-workers and supervisors. Finally, the stress of production and deadlines in the work environment most likely would escalate his symptoms. I do not believe that Mr. Hiner is able to secure or maintain competitive employment. Furthermore, given the chronicity of his illness and his treatment resistant symptoms it is unlikely this situation will change enough for him to resume employment in the future.

(R. at 833).

Contrary to the ALJ's assertion, the above letter provides an explanation of the bases for the opinions of the treatment providers. Although the ALJ properly discounted that portion of the opinion asserting that plaintiff had periods of time when plaintiff needed to be hospitalized, the ALJ failed to acknowledge the remainder of the letter which, in fact, provides an explanation for the opinions of the treatment providers.

The ALJ further notes that plaintiff has only had "minimal treatment" (R. at 20) and "infrequent treatment" (R. at 18), noting that plaintiff had only been seen six times for mental

7

health treatment since the alleged onset date (R. at 18). It is true that plaintiff was seen by the treatment providers on six occasions from January 19, 2009 through January 11, 2010 (R. at 937-944, 1033-1037). However, these treatment providers had been treating plaintiff since February 27, 2006, and over a four year period (48 months) saw the plaintiff on 33 occasions (R. at 456-498, 687-689, 936-948, 1032-1038).[2] The record does not support the ALJ's assertion that plaintiff's treatment can be considered minimal or infrequent in light of 33 visits over a 48 month period. The ALJ does not cite to any evidence in support of his assertion on this point.

The ALJ also found that the mental status exams showed "only moderate findings" (R. at 20). However, a review of the progress notes do not demonstrate only moderate findings. The court will focus on the six progress notes from 2009-2010, after the alleged onset date of disability. One portion of the progress notes asks the treatment provider to rate the current impairment as either "serious," "moderate," "mild," "minimal," or "none" (R. at 943). All six progress notes list plaintiff's impairment as "serious"; none of the progress notes after the alleged onset date indicate that plaintiff's impairments are only "moderate" (R. at 943, 941, 939, 937, 1036, 1033). Insight and judgment on the six treatment notes is listed as "poor" on

---

[2] This included 9 visits in 2006, 11 visits in 2007, 7 visits in 2008, and 6 more visits in 2009 and January 2010.

four, and "fair" on two of the notes. Other problems listed included sleep problems (5x), problems with activities of daily living (5x), appetite changes (1x), compliance problems (3x), and side effects (1x). A short-term goal listed on five of the six progress notes seeks to "Reduce legal, social, vocational, and emotional problems that arise from reckless, inappropriate, withdrawn, or violent behavior that may occur during episodes" (R. at 943, 941, 939, 937, 1036, 1033).

Finally, the ALJ asserts that the opinions of the treatment providers are conclusory opinions that appear to give the maximum benefit of the doubt to the claimant's subjective complaints (R. at 20). In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this

9

> court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

Subsequently, in the case of Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. See Langley, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the record for the ALJ's conclusion. Nothing in Dr. Covington's report indicates that he based his opinion on claimant's subjective complaints, and the ALJ's finding ignores all of Dr. Covington's examinations, medical tests, and reports. Indeed, the ALJ's discussion of Dr. Covington omits entirely his March 22, 2001 examination and report. His April 3, 2001 statement might well have been based on his recent first-hand examination and observation of claimant during this examination, performed less than two weeks earlier, rather than on claimant's subjective complaints, as the ALJ speculated. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (noting that the treating physician's opinion may "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

121 Fed. Appx. at 823-824; see Garcia v. Barnhart, 188 Fed. Appx. 760, 763-766 (10th Cir. July 13, 2006); Ray v. Astrue, Case No. 12-4029-SAC (D. Kan. Feb. 13, 2013; Doc. 19 at 7-11)(ALJ erred by erroneously asserting that that the treatment provider

10

relied quite heavily on plaintiff's subjective reports, or that the opinions reflected an effort to assist a patient with whom he sympathizes, or the report reflected an effort to avoid unnecessary tension with the patient); Yohe v. Astrue, Case No. 10-1396-SAC (D. Kan. Jan. 10, 2012; Doc. 22 at 9-12)(ALJ erred by erroneously asserting that the medical opinions were simply based on claimant's subjective complaints); Field v. Astrue, Case No. 10-4056-SAC (D. Kan. Aug. 2, 2011; Doc. 25 at 17-19)(ALJ erred by erroneously stating that medical opinions based only or primarily on plaintiff's subjective complaints); Frye v. Astrue, Case No. 10-1251-SAC (D. Kan. July 6, 2011; Doc. 13 at 12-13)(same); Farmer v. Astrue, Case No. 10-1284-SAC (D. Kan. May 25, 2011; Doc. 16 at 10-12)(same); Baker v. Astrue, Case No. 10-1253-SAC (D. Kan. Apr. 20, 2011; Doc. 16 at 10-13)(same); Moore v. Astrue, Case No. 09-2549-SAC (D. Kan. Nov. 30, 2010; Doc. 23 at 9-11)(same); Coleman v. Astrue, Case No. 09-1338-SAC (Nov. 30, 2010; Doc. 20 at 11-13)(same).

As Langley makes clear, the ALJ must have either a legal or evidentiary basis for asserting that the medical source report was based only or primarily on plaintiff's subjective complaints. This was reaffirmed in Victory, and in subsequent opinions of this court. However, the ALJ did not provide either a legal or evidentiary basis for his assertion that the opinions of the treatment providers were conclusory opinions that gave

the maximum benefit of the doubt to plaintiff's subjective complaints. In fact, the mental RFC assessment filled out by Dr. Gambrill and ARNP Canterbury states that opinions "should be based on your findings with respect to medical history, clinical and laboratory findings, diagnosis, prescribed treatment and response, and prognosis" (R. at 830). In light of the numerous errors by the ALJ in his analysis of the opinions of Dr. Gambrill and ARNP Canterbury, this case shall be remanded in order for the ALJ to give proper consideration to their opinions.

**IV. Did the ALJ err in his weighing of the medical opinion evidence regarding plaintiff's physical impairments?**

In making his physical RFC findings, the ALJ gave little weight to the opinions of Dr. Hughes, a treatment provider (R. at 20), but gave great weight to the opinions of Dr. Zarr, another treatment provider (R. at 21). The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a

reasonable mind might accept as adequate to support a conclusion).

The court finds no clear error by the ALJ in his reasons for giving greater weight to the opinions of Dr. Zarr. However, when this case is remanded, the ALJ needs to consider a report from a former employer of the plaintiff, Diane Speer. Ms. Speer noted that plaintiff did not work full-time, and that his schedule was reduced due to complaints of back pain. She further indicated she would not rehire plaintiff because he required assistance for his shift due to restrictions on lifting or heavy duties. It was also noted that plaintiff missed some work due to back pain and/or doctor's appointments (R. at 206-207).

In <u>Blea v. Barnhart</u>, 466 F.3d 903 (10th Cir. 2006), the ALJ failed to discuss or consider the lay testimony of the claimant's wife; the ALJ's decision failed to mention any of the particulars of the testimony of claimant's wife, and in fact, never even mentioned the fact that she did testify regarding the nature and severity of her husband's impairments. The court held as follows:

> In actuality, the ALJ is not required to make specific written findings of credibility only if "the written decision reflects that the ALJ considered the testimony." <u>Adams</u>, 93 F.3d at 715. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must

13

> discuss the uncontroverted evidence he
> chooses not to rely upon, as well as
> significantly probative evidence he
> rejects." Clifton v. Chater, 79 F.3d 1007,
> 1009 (10th Cir.1996).
>
> Here, the ALJ made no mention of Mrs. Blea's
> testimony, nor did he refer to the substance
> of her testimony anywhere in the written
> decision. Thus, it is not at all "clear that
> the ALJ considered [Mrs. Blea's] testimony
> in making his decision." Adams, 93 F.3d at
> 715. Additionally, Mrs. Blea's testimony
> regarding her husband's suicidal thoughts is
> not only uncontroverted; it serves to
> corroborate Dr. Padilla's psychiatric
> examination of Mr. Blea, where he stated
> that Mr. Blea has been dysthymic for years.
> [citation to record omitted] Thus, the ALJ's
> refusal to discuss why he rejected her
> testimony violates our court's precedent,
> and requires remand for the ALJ to
> incorporate Mrs. Blea's testimony into his
> decision. "Without the benefit of the ALJ's
> findings supported by the weighing of this
> relevant evidence, we cannot determine
> whether his conclusion[s] ... [are]
> supported by substantial evidence." Threet,
> 353 F.3d at 1190; see also Baker v. Bowen,
> 886 F.2d 289, 291 (10th Cir.1989) ("[W]here
> the record on appeal is unclear as to
> whether the ALJ applied the appropriate
> standard by considering all the evidence
> before him, the proper remedy is reversal
> and remand.").

Blea, 466 F.3d at 915. According to Blea, the ALJ, at a minimum, should indicate in his decision that he has considered the 3rd party testimony. This third party testimony must be considered in light of the statement from Dr. Hughes that plaintiff would be substantially limited in working even part

14

time due to a number of physical limitations, including difficulties with lifting (R. at 1118).

**V. Did the ALJ err in his consideration of plaintiff's obesity?**

SSR 02-1p is a social security ruling governing the evaluation of obesity. It states that, when assessing RFC, obesity may cause limitations of various functions, including exertional, postural and social functions. Therefore, an assessment should also be made of the effect obesity has upon the claimant's ability to perform routine movement and necessary physical activity within the work environment. Obesity may also affect the claimant's ability to sustain a function over time. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. 2002 WL 32255132 at *7. The discussion in the SSR on obesity and RFC concludes by stating that: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." 2002 WL 32255132 at *8.

The ALJ found that plaintiff had a number of severe impairments, including obesity (R. at 11). The ALJ stated that it considered the effects of plaintiff's obesity in accordance with SSR 02-01p. The ALJ noted that, at the hearing, plaintiff had a body mass index (BMI) of 50.2, which met the criteria of morbid obesity. While the ALJ did not find the obesity was

disabling, the ALJ found that obesity, in combination with plaintiff's other impairments, significantly limited plaintiff in his ability to work (R. at 15). The ALJ limited plaintiff to light work with only the ability to occasionally engage in postural activities (R. at 14). The ALJ gave "moderate" weight to the opinions of Dr. Siemsen, who discussed plaintiff's obesity in his RFC findings (R. at 705). However, although Dr. Siemsen limited plaintiff to medium work, the ALJ further limited plaintiff to light work (R. at 20). See Howard v. Barnhart, 379 F.3d 945, 948 (10th Cir. 2004)(court found no error in ALJ's consideration of plaintiff's obesity, noting that consultative examination, which took into account plaintiff's obesity, supported ALJ's RFC determination).

Furthermore, plaintiff has failed to point to any evidence in the record indicating that plaintiff's obesity resulted in limitations not included in the ALJ's RFC findings. In the case of Arles v. Astrue, 438 Fed. Appx. 735, 740 (10th Cir. Sept. 28, 2011), the ALJ specifically stated that plaintiff's obesity was evaluated under the criteria set forth in SSR 02-1p, and that the court's practice was to take a lower tribunal at its word when it declares that it has considered a matter [citing to Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005]. Moreover, the court noted that the claimant did not discuss or cite to any evidence showing that obesity further limited his

ability to perform a restricted range of sedentary work. The court held that the ALJ's decision provided an adequate explanation of the effect of obesity on plaintiff's RFC.

In the case of <u>Warner v. Astrue</u>, 338 Fed. Appx. 748, 751 (10th Cir. July 16, 2009), the ALJ found that the claimant's body mass index placed her in the obese range and concluded that she had significant restrictions in her abilities to perform work related activities, in part, as a result of her obesity. The ALJ followed this statement with a detailed discussion of the claimant's orthopedic, muscular, rheumatic, and joint issues, coronary artery disease, and pain. The ALJ made RFC findings consistent with the assessment of the medical consultant. The court held that the ALJ decision adequately discussed the effect of obesity on the claimant's other severe impairments.

In the case before the court, the ALJ found that plaintiff was obese, and set forth his BMI. The ALJ indicated that plaintiff's obesity, in combination with other impairments, limited him to light work with only occasional postural activities. Finally, plaintiff failed to cite to any medical or other evidence showing that obesity resulted in limitations not contained in the ALJ's RFC findings. Therefore, the court finds no error by the ALJ in his consideration of plaintiff's obesity.

**VI. Did the ALJ err in his consideration of plaintiff's credibility?**

Plaintiff also asserts error by the ALJ in his credibility findings. The court will not address this issue because it may be affected by the ALJ's resolution of the case on remand after giving further consideration to the evidence and medical opinions regarding plaintiff's mental and physical impairments and limitations. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 2nd day of July, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge